NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

———

No. 09-1944

———

SHERRIE VERNON,
                                        Appellant

v.

A&L MOTORS

———

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 2-07-cv-01508)
District Judge: Joy Flowers Conti

———

Submitted Under Third Circuit LAR 34.1(a)
February 12, 2010

Before: SLOVITER, ROTH, and TASHIMA,* Circuit Judges

(Filed: May 26, 2010)

———

OPINION

———

---

*Honorable A. Wallace Tashima, Senior Judge of the United States Court of Appeals for
the Ninth Circuit, sitting by designation.

TASHIMA, *Circuit Judge.*

Sherrie Vernon appeals the District Court's grant of A&L Motors' ("A&L")
Motion for Summary Judgment in her action alleging gender discrimination in violation
of Title VII, 42 U.S.C. § 2000e, *et seq.*, and the Pennsylvania Human Relations Act
("PHRA"), 43 Pa. Cons. Stat. § 951, *et seq.* We affirm.[1]

## I.

Vernon worked as an Accounts Payable/Accounts Receivable clerk at A&L, an
automobile dealership owned by Steve and Brian Lamfrom. App. 20, 73-74, 183, 443,
476. She was hired on April 30, 2007, by Kim Beter, A&L's female Office Manager,
who is responsible for supervising the Accounting Department. App. 66-67, 69, 330,
478. Vernon's pay was $12.00 an hour, a higher rate than A&L typically paid those with
her position, because Vernon reported to Beter that she had 16 years of accounting
experience. App. 66-68, 139, 784-800.

A&L also has an After Sales Department, which Richard Brooks manages. App.
222, 735. Ron Koski, a Warranty Administrator, is an the employee in that department.
App. 111, 741-42. Brooks hired Koski around August 2005. App. 699, 741-42.

Both Brooks and Beter report directly to the Lamfroms, but each has the authority

---

[1] The District Court had jurisdiction over Vernon's Title
VII claim pursuant to 28 U.S.C. §§ 1331 & 1343(a) and over her
PHRA claim pursuant to 28 U.S.C. § 1367(a). We have
jurisdiction pursuant to 28 U.S.C. § 1291.

to make hiring and firing decisions with respect to the employees in their respective departments. App. 125, 220-21, 478-79, 739-40.

On June 18, 2007, Beter learned that Vernon disclosed her wages in front of Koski, who allegedly became upset because he was being paid less than a woman.[2] App. 120, 239-40. Steve Lamfrom confronted Beter, asking her, "Who is this girl upstairs that is causing a problem and going around talking about her wages?" and stating, "Get rid of her." App. 82, 239-40. Beter investigated the incident, first asking Vernon whether she had disclosed her wages to anyone. App. 126-27. After Vernon denied having done so, Beter went to find Steve Lamfrom, presumably to clear up the misunderstanding. App. 245. On her way, Beter ran into Brooks, who confirmed that Vernon had disclosed her wages to him in Koski's presence. App. 126-27, 245-46. Beter then called Vernon into her office, and Vernon confirmed what Brooks said. App. 127-28, 256-57. Beter then fired Vernon. App. 129, 250-52. She told Vernon that she had to fire her because Koski complained that Vernon made more money than him. App. 129, 130-31. Vernon testified at her deposition that Beter also told her she had to fire her or else Steve Lamfrom would make Beter's life "a living hell." App. 129. In Vernon's termination paperwork, Beter

---

[2] Beter denies that Koski complained that a woman was making more than he was. App. 242. Koski claims that he never complained that Vernon was making more than him and that he was given a raise unexpectedly based on merit. App. 710-11, 716-17. Viewing the facts in the light most favorable to Vernon, we assume that Koski complained that he was being paid less than a woman.

3

indicated that Vernon had been fired for disclosing her wages contrary to company policy.[3] App. 259, 271-72. Although Beter testified that Vernon's performance had been deficient, she did not bring the deficiency up with Vernon when she fired her or include it in the termination paperwork. App. 259, 271.

Vernon was replaced by a female. App. 179-80. Koski was given a raise two to three weeks after Vernon was terminated. App. 716-17.

Vernon filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging gender discrimination, App. 19, and the EEOC issued a Notice of Right to Sue. Vernon timely sued in federal court, alleging gender discrimination under Title VII and the PHRA. App. 22-23. A Magistrate Judge issued a Report & Recommendation ("R&R") finding that Vernon failed to make out a *prima facie* case of gender discrimination and that even if she had, Vernon failed to rebut A&L's legitimate, non-discriminatory business reasons for terminating her. The District Court adopted the Magistrate Judge's R&R, granting summary judgment to A&L.[4]

---

[3] Vernon points out that A&L has identified several other reasons for terminating her, suggesting that Vernon's wage disclosure was pretextual. Although A&L has pointed to multiple reasons for Vernon's termination, it has not abandoned its initial reason, nor has it identified any reasons that are inconsistent with this initial reason.

[4] We exercise plenary review over the District Court's grant of summary judgment. *Abramson v. William Patterson Coll. of N.J.*, 260 F.3d 265, 276 (3d Cir. 2001). If there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law, we affirm the District Court's ruling. Fed. R.

**II.**

Title VII prohibits discrimination with respect to "compensation, terms, conditions, or privileges of employment because of . . . sex[.]" 42 U.S.C. § 2000e-2(a)(1).[5] Where, as here, there is no direct evidence of gender discrimination, we apply the *McDonnell Douglas* burden-shifting framework. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Under this framework, Vernon must first establish a *prima facie* case of gender discrimination by showing that: (1) she is a member of a protected class; (2) she is qualified for the position in question; (3) she suffered an adverse employment action; and (4) circumstances exist that give rise to an inference of unlawful discrimination. *See Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981); *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 410-11 (3d Cir. 1999); *Pivirotto v. Innovative Sys., Inc.*, 191 F.3d 344, 357 (3d Cir. 1999). Because A&L does not dispute Vernon's ability to establish the first three elements, we turn to the fourth element.

Vernon argues that a similarly situated individual outside of her protected class engaged in the same conduct as she did and was treated more favorably. The

---

Civ. P. 56(c)(2). In our review, we must view the facts in the light most favorable to Vernon, the non-moving party. *See Abramson*, 260 F.3d at 276.

[5] As the District Court noted, for the purpose of deciding an employer's motion for summary judgment in an action under Title VII and the PHRA, the standards under the federal and state statutes are the same. *See Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 409 (3d Cir. 1999). Accordingly, our decision with respect to Vernon's Title VII claim applies as well to her PHRA claim.

5

identification of such an individual may give rise to an inference of unlawful discrimination. *See id.* at 358-59; *Bennun v. Rutgers State Univ.*, 941 F.2d 154, 170 (3d Cir. 1991), *abrogated on other grounds by St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515-16 (1993). "[I]n determining whether similarly situated male employees were treated more favorably, our 'focus is on the particular criteria or qualifications identified by the employer as the reason for the adverse action.'" *Pivirotto*, 191 F.3d at 359 (quoting *Simpson v. Kay Jewelers*, 142 F.3d 639, 647 (3d Cir. 1998)).

The only comparator Vernon identifies is Koski. However, Koski performed a different job than Vernon, in a different department, for a different supervisor. *See Pivirotto*, 191 F.3d at 359 (holding that male employee, who was in-house counsel to employer, was not similarly situated to plaintiff, who was director of regional sales operations). Moreover, unlike Vernon, who disclosed her wage in front of a co-worker, Koski only disclosed his wage to his supervisor, not another co-worker. *See id.* (holding that male employee was not similarly situated where plaintiff was fired for a "tendency to blame others" and there was no evidence that male employee had exhibited a similar tendency).

Also undermining any inference of unlawful discrimination is the fact that Beter, the woman who initially hired Vernon, was responsible for firing her. Vernon seeks to attribute the adverse employment action to either Steve Lamfrom or Koski. However, her attempt to paint Beter as merely fulfilling the wishes of Steve Lamfrom is defeated by the

6

evidence that Beter conducted her own investigation of the matter and was prepared to advocate on Vernon's behalf when Beter was under the impression that the charges of wage disclosure by Vernon were unfounded.

Vernon's suggestion that Koski somehow influenced the decision-maker responsible for the adverse employment action also fails. Although, viewing the facts in the light most favorable to Vernon, the inference can be drawn that Koski had a gender bias, there is no basis for attributing that bias to Beter or the Lamfroms – especially because the underlying complaint was that Vernon was being paid *more* than Koski.

In sum, Vernon has not established any causal nexus between her membership in a protected class and the decision to terminate her. *See Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 798 (3d Cir. 2003). Accordingly, Vernon has failed to make out a *prima facie* case of gender discrimination.

Because we conclude that Vernon has failed to make out a *prima facie* case, we need not reach the issue whether Vernon established that A&L's proffered reasons for terminating her were pretextual.[6]

---

[6] We reject Vernon's assertion that once a defendant has offered a legitimate reason for the adverse employment action, the *prima facie* inquiry becomes "irrelevant." The cases on which Vernon relies merely hold that once a plaintiff has successfully established a *prima facie* case and the defendant has proffered a legitimate, non-discriminatory business reason to rebut it, the analysis proceeds to the ultimate question whether the plaintiff has established discrimination. *See, e.g.*, *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142-43 (2000) (holding that

## III.

For the above-stated reasons, the judgment of the District Court will be affirmed.

---

once the plaintiff establishes a *prima facie* case of discrimination and the defendant meets its burden of production to show a legitimate, nondiscriminatory reason for its decision, "the *McDonnell Douglas* framework – with its presumptions and burdens – disappear[s] and the sole remaining issue [is] discrimination *vel non*." (internal citations and quotation marks omitted)). That a defendant can meet its burden of production does not excuse a plaintiff's failure to make a *prima facie* case.