Carl P. WAGNER, Appellant,

v.

PENNSYLVANIA RAILROAD COMPANY, a corporation.

No. 13127.

United States Court of Appeals Third Circuit.

Argued April 8, 1960.

Decided Sept. 8, 1960.

P. J. McArdle, Pittsburgh, Pa. (Frank J. Kernan, Pittsburgh, Pa., on the brief), for appellant.

John R. Bredin, Pittsburgh, Pa. (Pringle, Bredin & Martin, Pittsburgh, Pa., on the brief), for appellee.

Before McLAUGHLIN, STALEY and FORMAN, Circuit Judges.

FORMAN, Circuit Judge.

Appellant, Carl P. Wagner, was injured while an employee of the Pennsylvania Railroad Company. At that time he was working with two other employees, John Moskiewski and Louis Belajac, at the task of changing the wheels of a freight car. His job was to operate an automatic four wheeled Baker crane with which he had lifted the bolster of the car so that its weight was borne by the crane. He got off the crane for the purpose of helping Belajac change the springs of the car. While he was in a crouched position between the car and the crane, the latter moved against him pinning him between it and the freight car, causing him to be severely injured. He sued the Railroad under Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq.

At the trial Wagner contended that the brakes on the crane gave way due to the negligence upon the part of the Railroad, among other things, in failing to exercise reasonable care to inspect and discover the defective condition of the brakes. The defendant contended that it had made proper inspection and mainly defended on the theory that Wagner brought about his injuries himself by violating its safety rule 4113 which states:

"Leaving hoisting equipment unattended with load, bucket or magnet suspended, is prohibited."

The jury returned a verdict in favor of Wagner in the sum of $20,000, having reduced it from $25,000 on finding contributory negligence to the extent of 20%.

Subsequently Wagner moved for a new trial under Rule 59, Federal Rules of Civil Procedure, 28 U.S.C.A. and for relief from judgment under Rule 60(b). He also filed a petition requesting the court to set a hearing date for the taking of testimony in connection with the motion under Rule 60(b).

After considering the arguments of counsel for both sides, the trial court filed an opinion in which it declined to disturb the judgment and ordered Wagner's motions for new trial and relief from judgment denied, and the petition for hearing in support of the motion for new trial dismissed.

Wagner appealed, claiming, among other things, that the trial court erred in sustaining the objection of the Railroad's attorney to a question propounded by him on cross-examination. The Railroad had called Frank Reiser, Wagner's gang foreman, as its witness. He answered questions on direct examination relating to the practice of changing wheels on freight cars and identified a booklet entitled Safety Rules and Rule 4113 contained therein. The cross-examination question, objection to which was sustained by the court, was as follows:

"Q. So even if Wagner were on this crane and it had been Belajac or Moskiewski putting the springs in, one of them would have been hurt by the crane."

Wagner's attorney argued that the question was proper on his theory that the violation of the safety rule was not the proximate cause of Wagner's injuries. He contended that an affirmative answer to the question would have demonstrated that the violation of the safety rule to which Reiser testified on direct examination was not the proximate cause of Wagner's injuries and that therefore such violation would be entitled to no weight in the jury's consideration of contributory negligence.

To buttress the propriety of the question, counsel quoted from Sierocinski v. E. I. Dupont de Nemours & Co., 3 Cir., 1941, 118 F.2d 531, 536, 537, as follows:

> "It is of the office of cross-examination to appraise the weight, if any, to be ascribed to the inferences to be drawn from a witness' testimony."

It is to be noted that the quotation is immediately preceded by the following language:

> "Cross-examination therefore, *with respect to relevant and material facts, known to the witness, concerning the circumstances of the accident*, which were capable of supporting an inference that the accident may have happened unaffected by any control of the defendant was not improper." (Emphasis supplied.)

While the language cited by Wagner undoubtedly states an unimpeachable proposition of law, it is predicated on the language that precedes it and contemplates "relevant and material facts, known to the witness, concerning the circumstances of the accident." Obviously the question under discussion did not call for such testimony. Indeed, it did not call for any expert opinion but rather a conjecture upon the part of the witness that "if Wagner were on this crane, and it had been Belajac or Moskiewski putting the springs in, one of them would have been hurt by the crane." Nothing in the factual background supported the premise of the hypothetical question. It is true that the question was posed on cross-examination and leeway is generally given to an examiner then to probe the witness using pertinent facts as premises, even though not in evidence, to test his credibility or the reasonableness of his opinion.[1] But there was no such purpose here and the question called not for an expression of expert opinion but rather for a mere conjecture as to what would have happened had a state of facts obtained that were different from those actually proved.[2] Under no circumstances could a guess by Reiser in this regard aid the jury whose province alone it was to determine whether the conduct of Wagner made him contributorily negligent.

Moreover, the scope of cross-examination is generally within the discretion of the trial court.[3] Here there was no abuse of discretion and the action of the court in sustaining the objection was not error.

Another error urged by Wagner involved counsel's comment during summation, as follows:

> " * * * That isn't so; if it hadn't been Wagner that was hurt, it would have been Belajac or Moskiewski, wouldn't it, because Wagner on that crane couldn't have prevented the movement on that crane at all because the crane had no brakes. * * * "

Counsel for the Railroad moved for a mistrial for this and another alleged prejudicial comment by Wagner's attorney. The court denied the motion for mistrial, but at the end of his general charge instructed the jury as follows:

> "Furthermore, I am going to ask you to disregard the argument made in the closing address of counsel for the plaintiff to you in regard to what might have happened to another employee assuming Mr. Wagner, the

1. Taylor v. Reo Motors, Inc., 10 Cir., 1960, 275 F.2d 699, 702; 11 Wigmore, Evidence § 684 (3rd ed. 1940). See Annotation 71 A.L.R.2d 6, 27 (1960).

2. See Sweeney v. Blue Anchor Beverage Co., 1937, 325 Pa. 216, 189 A. 331; Marks v. Lumbermen's Ins. Co., 1946, 160 Pa.Super. 66, 49 A.2d 855; Korf v. Fleming, 1948, 239 Iowa 501, 32 N.W.2d 85, 3 A.L.R.2d 270; 32 C.J.S. Evidence § 450 (1942).

3. See Hockaday v. Red Line, 1949, 85 U.S. App.D.C. 1, 174 F.2d 154, 9 A.L.R.2d 601; Thompson v. American Steel & Wire Co., 1934, 317 Pa. 7, 175 A. 541; Berry v. Heinel Motors, 1948, 162 Pa. Super. 52, 56 A.2d 374.

plaintiff, had been on the crane. That was ruled out of evidence and therefore I am asking you again not to consider it in your deliberations."

Wagner claimed error in this charge. He insists that his comment was legitimate argument designed to meet that of the Railroad, that Rule 4113 was passed to protect crane operators, and that the proximate cause of the accident was "plaintiff's putting himself in a position where he was injured when the crane moved." Wagner contended that his argument that another employee would have been injured if he were working on the springs illustrated that Wagner's absence from the crane was not a proximate cause of the accident under the circumstances of the non-operative condition of the brake, from which the jury might validly infer that Wagner's breach of the rule was not contributory negligence.

■ Of course, Wagner's counsel, during his summation to the jury, was entitled to present such legitimate inferences as could be drawn from the pertinent evidence adduced in the case.[4] Nor are such arguments to be too narrowly limited.[5] Here, however, he drew upon conjecture rather than evidence when he argued that another would have been injured had Wagner remained on the crane. The trial court properly restricted this argument.

A review of the entire charge of the court reveals scrupulously fair instructions to the jury, in which the trial court gave it full and proper guidance in the law of the case. In its reference to the legal effect of the safety rule and its alleged violation as evidence of negligence it emphasized that the violation was "not binding or conclusive as a final standard of negligence, and [that] it may be considered only along with all other circumstances as evidence of negligence." It pointed up disputed questions of fact as to whether Wagner had been instructed to leave the crane unattended and assist his co-workers, the safety rule notwithstanding, and the alleged existence of a custom to that effect. The application of the rule and the questions of its violation and the effect thereof were left untrammelled in the hands of the jury for its determination.

■ Again, as in the case of the control of the cross-examination, the extent of summation by counsel is left to the discretion of the trial judge.[6] Here it cannot be said that his discretion was abused.

■ As grounds for the motions for new trial and for relief from judgment, Wagner charged that the Railroad had committed fraud in that it represented to the jury that he was secure in his employment at light duty but that at the time the representation was made, it intended to discharge him and did discharge him about a week after the trial was concluded. He filed a petition with the court to set a day for hearing so that sworn testimony might be taken to determine the truth of the matters set forth in the motion for relief from judgment.

Wagner was injured on April 27, 1956. He was hospitalized until May 10, 1956. Four months thereafter, he returned to the Railroad and was given light work which he continued to perform and was so engaged at the time of the trial in February 1959.

Wagner's physician testified that he was in need of a surgical fusion in the lumbosacral region in order to stabilize

4. London Guarantee & Accident Co. v. Woelfle, 8 Cir., 1936, 83 F.2d 325; 53 Am.Jur.Trial § 480 (1945); see Brown v. Walter, 2 Cir., 1933, 62 F.2d 798; Lustine-Nicholson Motor Company v. Petzal, 1959, 106 U.S.App.D.C. 18, 268 F.2d 893; Little v. Four Wheel Drive Sales Company, 319 Pa. 409, 415, 179 A. 550 (1935).

5. Chapman v. Alton R. R. Co., 7 Cir., 1941, 117 F.2d 669.

6. See Fidelity Phenix Fire Ins. Co. v. Vallone, 5 Cir., 1936, 74 F.2d 137, certiorari denied 1935, 294 U.S. 727, 55 S.Ct. 636, 79 L.Ed. 1257; Hockaday v. Red Line, supra note 3; Berry v. Heinel Motors, supra note 3; Lustine-Nicholson Motor Company v. Petzal, supra note 4.

his lower back. His opinion was that such an operation would be completely disabling for a period of six months to a year and that then the patient would be fit for light duty but that ordinarily he could not perform heavy manual work thereafter.

The Railroad's doctors testified that they found no disabling abnormality in Wagner's back which would prevent him from carrying on the normal duties of a car repairman's helper.

The Railroad denied that it had discharged Wagner but maintained that it had continued to mark him for light work only, consistent with what Wagner and his doctor had said was all that was within his capacity, notwithstanding the opinions to the contrary of its doctors, and that he had been furloughed shortly after the trial because work conditions had made such employment unavailable for him.

Wagner contends that the representations designed to mislead the jury into the inference that he was secure in his employment arose out of utterances of counsel for the Railroad during the trial.

On cross-examination, the following exchange ensued between the Railroad's counsel and Wagner:

"Q. You are still a car repairman helper's classification? A. Yes, sir.

"Q. You still make car repairman helper's wages, don't you? A. Yes. sir."

During his summation, counsel for the Railroad stated:

"His classification is a car repairman helper. He said there was nothing wrong with his back before this, and that he went back to work as a car repairman helper, the same classification, although he didn't do the work that a car repairman helper does. He's been getting car re-

pairman helper's rate of pay ever since * * *

"He's been working regularly but not doing his regular work, but he is working at the same rate of pay ever since August 27, 1956."

\* \* \* \* \* \*

"Then what about these injuries? A $1400.00 wage loss. Mr. McArdle will talk to you about his life expectancy. What is there to prove to you that this man can't work and that he won't work, that he will lose any money the rest of his life?"

Wagner charges that the foregoing questions and comment were designed by the Railroad to mislead the jury into the conclusion that Wagner was secure in his employment, and that the Railroad knew at the time they were being made that it would discharge Wagner after the trial. Wagner exonerates counsel from having knowledge that the Railroad sought to defraud the jury but contends that the Railroad perpetrated the deceit by permitting the innocent act of its counsel to cover its alleged secret intent to render false that which was said by counsel.

The Railroad concedes that in order to limit the jury's award its counsel argued that under the evidence Wagner had been working since August 1956 at light work.

The argument of the Railroad's counsel went no further than to represent that plaintiff was doing light work and to submit that he was capable of continuing to do so. It was well within the evidence that had been presented. There was no engagement that the Railroad would give him continual security in such employment. There is no basis for the charge that the verdict of the jury was encompassed by fraud or misrepresentation.[7]

■ Since motions for new trial and for relief from judgment [8] are addressed to the sound discretion of the trial court

7. See Bassett v. New York, Chicago and St. Louis Railroad Company, 3 Cir., 1956, 235 F.2d 900.

8. Neville v. American Barge Line Company, 3 Cir., 1954, 218 F.2d 190.

and no abuse of such discretion having been shown, the order denying the motions for new trial and for relief from judgment and for the dismissal of the petition for hearing in support thereof will be affirmed.