William F. DAVIS,

v.

GENERAL ACCIDENT INSURANCE COMPANY OF AMERICA and William Jenkins.

Civil Action No. 98–4736.

United States District Court, E.D. Pennsylvania.

May 7, 2001.

Joyce Collier Brong, Anna M. Durbin, Ardmore, PA, for Plaintiff.

Saundra M. Yaklin, Carolyn P. Short, Don A. Innamorato, Sara A. Begley, Reed, Smith, Shaw & McClay, Lisa A. Mathewson, Welsh & Recker, Edward J. David, Mylotte, David & Fitzpatrick, Philadelphia, PA, for Defendants.

## MEMORANDUM AND ORDER

HUTTON, District Judge.

Presently before the Court are the Plaintiff's Motion for a New Trial (Docket No. 126), the Plaintiff's Supplemental Brief in Support of Motion for New Trial (Docket No. 139), the Defendants' Opposition to Plaintiff's Motion for a New Trial (Docket No. 141), and the Memorandum of Law in Support of Defendants' Opposition to Plaintiff's Supplemental Brief in Support of Motion for a New Trial (Docket No. 143).

## I.  BACKGROUND

The Plaintiff, William Davis, initiated this action on September 3, 1998 against the Defendants, General Accident Insurance Company of America (GAI) and William Jenkins (Jenkins).  On March 3, 1999, the Plaintiff filed a first amended complaint requesting relief from both Defendants for racially-motivated employment discrimination under 42 U.S.C. § 1981, conspiracy to deprive the Plaintiff of his rights to make and enforce an employment contract under 42 U.S.C. § 1985(3), and negligence in failing to prevent a conspiracy under 42 U.S.C. § 1986.  In addition, the Plaintiff sought relief for a violation of Title VII of the Civil Rights Act of 1964 from the Defendant GAI only.

On January 24, 2001, a two week jury trial commenced on the Plaintiff's claims. After the presentation of the Plaintiff's case in chief, the Defendant made a motion for judgment as a matter of law pursuant to Rule 50 of the Federal Rules of Civil Procedure.  The Court granted the Defendants' motion as to the Plaintiff's claims under 42 U.S.C. § 1985(3) and 42 U.S.C. § 1986 and denied the Defendants' motion as to the Plaintiff's remaining claims.  On February 7, 2001, the jury returned a verdict for the Defendants.  On February 23, 2001, the Plaintiff filed the instant motion for a new trial.

## II.  DISCUSSION

Federal Rule of Civil Procedure 59(a) governs a motion for a new trial.  A court

may grant a new trial "to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States...." Fed.R.Civ.P. 59(a). A court may grant a new trial on the grounds of: (1) improper admission or exclusion of evidence; (2) improper instructions to the jury; (3) misconduct of counsel; (4) newly discovered evidence; or (5) a finding that the jury's verdict is against the weight of the evidence. *See Griffiths v. Cigna Corp.*, 857 F.Supp. 399, 410–11 (E.D.Pa.1994), *aff'd*, 60 F.3d 814 (3d Cir.1995) (unpublished table decision). The Plaintiff's motion involves allegations of error which fall into two categories: (1) improper admission of evidence; and (2) misconduct of defense counsel.

### A. *Improper Admission of Evidence*

█ The Plaintiff asserts that it was error to allow the Defendants to introduce evidence regarding the treatment of one of the Plaintiff's coemployees, Mike Freidel (Freidel), who was white. The Defendant claims that the similar treatment that Freidel received rebuts the inference that the Plaintiff's treatment was based upon his race. Rule 401 of the Federal Rules of Evidence provides that " '[r]elevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R.Evid. 401 (West 2001). "All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by [the rules of evidence], or by other rules proscribed by the Supreme Court pursuant to statutory authority." Fed.R.Evid. 402 (West 2001). The essence of the Plaintiff's claims is that race was the motivating factor in the De-

fendants' decision to demote him during a reorganization of the company which included revoking certain management privileges, the decision not to promote him after the reorganization, and the decision not to reclassify him to a higher pay grade which would have included a reinstatement of his management privileges. Freidel was a white employee who was also demoted during the reorganization of the company, never promoted after the reorganization, and never reclassified to a higher pay grade which would have included a reinstatement of his management privileges. While Freidel's treatment is not determinative of the Plaintiff's action, it is certainly relevant to the proposition that race was not the motivating factor in the Defendants' decision making process.

The Plaintiff's argument relies on *Pivirotto v. Innovative Systems, Inc.*, 191 F.3d 344 (3d Cir.1999). In *Pivirotto*, a terminated female employee brought a gender discrimination claim against her former employer. *See id.* at 347. The district court had instructed the jury that they were required to enter a verdict for the employer if they found that the plaintiff had been replaced by a woman. *See id.* The Third Circuit made clear that a plaintiff in a gender discrimination suit was not required to show that they were replaced by a member of the opposite sex to make out their prima facie case. *See id.* at 354. In the instant case, the Plaintiff claims that the introduction of the evidence regarding Freidel essentially made him prove that he was treated worse than white employees as part of his prima facie case. However, in *Pivirotto*, the Court explained that while the attributes of the plaintiff's replacement were not a part of her prima facie case, the fact that the female plaintiff was replaced by another woman had some evidentiary force. *See id.* Here, the issue of how a similarly

situated white employee was treated is relevant to the motivation behind the company's decisionmaking process.[1]

The Plaintiff also objects to the introduction of evidence regarding Mr. Mike Freidel. The Plaintiff asserts that the Defendants (1) never produced Freidel's entire personnel file, (2) waited nine months before producing a few performance reviews for Mr. Freidel, and (3) published an incomplete summary of his reviews to the jury. At first, the Defendants objected to the production of the personnel files of Mr. Freidel during discovery on the grounds that it would be an invasion of privacy and the Plaintiff never sought to compel production of those documents. The Defendants, thereafter, voluntarily produced the relevant performance reviews. The Plaintiff then filed a motion in limine to exclude their use at trial and the Court denied the Plaintiff's motion.

Since the Court finds the introduction of the testimony of Mr. Freidel was proper, the Plaintiff's search for a new trial on this basis must fail. An erroneous evidentiary ruling will constitute reversible error only when " 'a substantial right of a party is affected.' " *Salas v. Wang*, 846 F.2d 897, 907 (3d Cir.1988) (quoting Fed.R.Evid. 103(a)). The court must decide if the error affected the outcome of the case. *See Reed v. Philadelphia, Bethlehem & New England R.R. Co.*, 939 F.2d 128, 134 (3d Cir.1991). In the instant case, there was substantial and significant evidence to support the jury's findings without the testimony of Freidel and the Court finds the introduction of that evidence did not prejudice the outcome of the case.

For the foregoing reasons, the Court finds that it was not error to allow the testimony of Mike Freidel in this case. In addition, the Court finds that the inclusion of that evidence did not affect the outcome of the case and therefore, did not affect a substantial right of a party. Therefore, the Plaintiff's motion for a new trial based upon this evidentiary ruling must be denied.

### B. *Misconduct of Counsel*

■ In support of his motion for a new trial, the Plaintiff also points to what he alleges is misconduct of Defense counsel during her closing argument. The Plaintiff alleges that Defense counsel's closing argument contained the following errors: (1) Defense counsel's closing argument ran too long resulting in a shortened rebuttal time for the Plaintiff, (2) Defense counsel unfairly attacked Plaintiff's counsel and the proceedings, (3) Defense counsel made reference to items outside of the evidence, (4) Defense counsel vouched for the credibility of the witnesses, (5) Defense counsel incorrectly argued points of law, and (6) there were numerous mischaracterizations and misstatements by Defense counsel. When analyzing the statements of counsel in her closing argument, the Court bears in mind that advocacy is not expected to be entirely devoid of passion. *See Draper v. Airco, Inc.,* 580 F.2d 91, 94 (3d Cir.1978). In addition, " 'improper comments during closing arguments rarely rise to the level of reversible error' " in civil trials. *Dunn v. HOVIC,* 1 F.3d 1371, 1377 (3d Cir.1993)(quoting *Littlefield v. McGuffey,* 954 F.2d 1337, 1346 (7th Cir.1992)).

---

1. Plaintiff argues that even if similarly situated employee testimony was allowed by the Defendants, Mike Freidel does not qualify as such under current case law. However, that determination is made by the jury and Plaintiff's counsel had an extensive opportunity to cross-examine Mr. Freidel on his differences from the Plaintiff. *See Roberts v. Home Corp.,* No. CIV.A.95–278, 1996 WL 524088, at *2 (E.D.Pa. Sept.11, 1996); February 5, 2001 Trial Tr. at 123–44.

"In this circuit, the test for determining whether to grant a new trial in cases involving counsel misconduct is 'whether the improper assertions have made it "reasonably probable" that the verdict was influenced by prejudicial statements.'" *Blanche Road Corp. v. Bensalem Township,* 57 F.3d 253, 264 (3d Cir.1995). When errors are claimed, the Court will look to the cumulative effect of the errors in determining if the verdict was improperly influenced. *See Draper,* 580 F.2d at 95. The Plaintiff does not explain how any of these alleged errors "made it 'reasonably probable' that the verdict was influenced by prejudicial statements."

### 1. *Defense Counsel's Closing Argument Ran Too Long Resulting in a Shortened Rebuttal Time for Plaintiff*

■ The Plaintiff's first assignment of error is that despite being limited to one-half hour, the Defendants' closing argument ran longer than one hour. *See* Pl.'s Supp. Brief in Support of Mot. for New Trial (Pl.'s Brief) at 8. According to the Plaintiff, the Defendants' prolonged closing combined with the Court's eagerness to charge the jury before the day ended caused the Court to order a "very brief rebuttal" and then cut off the Plaintiff's counsel twice during that rebuttal. *See* Pl.'s Brief at 8. Plaintiff's counsel claims that due to the eagerness of the Court, she was unable to specifically rebut Defendants' misstatements. *See* Pl.'s Brief at 8. The transcripts from the proceedings indicate otherwise.

The Court has discretion to limit the scope of summation as it sees fit. *See Wagner v. Pennsylvania R.R. Co.,* 282 F.2d 392, 396 (3d Cir.1960) ("the extent of summation by counsel is left to the discretion of the trial judge"). Despite limiting the time for closing argument in this case,

the Court at all times retained the flexibility to allow both parties adequate time to effectively state their case. *See id.* (same). The Court informed Defense counsel she was exceeding her allotted time but never demanded she cease. *See* February 6, 2001 Trial Tr. at 135–41. The Court attempted to give each party the time necessary to argue their case to the jury within the bounds of reasonableness. While Defense counsel may have disregarded admonitions that she had exceeded her time limit, the Court is unwilling to label these actions misconduct or inappropriate.

In addition, the Plaintiff was given the opportunity to argue to the jury and to offer a rebuttal to the Defendants' closing. Plaintiff's counsel was aware from the outset that the Court put no limit on rebuttal with the proviso that the material be new and different as opposed to reiterating old arguments for the purposes of emphasis. *See* February 6, 2001 Trial Tr. at 76–77. The request to make the rebuttal "very brief" was to focus Plaintiff's counsel on the purpose of rebuttal. Plaintiff's counsel was then cut off twice at the beginning of her rebuttal because she was rearguing her original closing instead of offering a rebuttal. *See* February 6, 2001 Trial Tr. at 142–43. Once Plaintiff's counsel began to address rebuttal, she was allowed to continue unabated. *See* February 6, 2001 Trial Tr. at 142–43. Plaintiff's counsel ceased her rebuttal argument without urging from the Court. *See* February 6, 2001 Trial Tr. at 142–43.

The Court denies the Plaintiff's motion regarding the first alleged error by Defense counsel.

### 2. *Defense Counsel Unfairly Attacked Plaintiff's Counsel and the Proceedings*

■ The second group of errors allegedly committed by Defense counsel during

her closing argument are impermissible attacks on Plaintiff's counsel. The Plaintiff points to the following in support of this contention: (1) Defense counsel said that what Plaintiff's counsel was "trying to say" was "ludicrous", (2) Defense counsel "blasted" Plaintiff's counsel directly regarding Plaintiff's counsel's reference to the Oval Office, (3) Defense counsel referred to Plaintiff's counsel's argument that witnesses Calvin Byrd and John Elcock were "misled" as "insulting" and asserted that Plaintiff's counsel had called them "stupid", (4) Defense counsel stated that when listening to Plaintiff's counsel she felt like she was in a different world, and (5) Defense counsel stated in reference to the trial that she "ha[s] known, observed and experienced the moments of ungodly boredom that have gone on in this courtroom." It is well settled that "vituperative references to opposing counsel will not be tolerated." *Fineman v. Armstrong World Indus.*, 980 F.2d 171, 209 (3d Cir.1992).

The cases which have found reversible error based upon statements about opposing counsel were much more extreme than the instant case. In *Draper*, the plaintiff's counsel accused defense counsel of being in the same conspiracy with the defendants and implying that he had participated in tampering with evidence. *See Draper*, 580 F.2d at 96. In *Fineman*, the plaintiff's counsel repeatedly invoked the credibility of defense counsel and discussed the amount of money defense counsel was being paid. *See Fineman*, 980 F.2d at 209. In the instant case, Plaintiff's counsel has simply excerpted three relatively insignificant statements by Defense counsel. Instead of being attacks on Plaintiff's counsel herself, Defense counsel's statements are really attacks on the arguments advanced by the Plaintiff. Regarding her references to the trial itself, Plaintiff's counsel points to the introduction of Defense counsel's

closing argument where she stated: "I have known observed and experienced the moments of ungodly boredom that have gone on in this courtroom and, for my participation in it and my contribution to it, I apologize, and I hope you will accept that and not hold it against my clients in this case." *See* February 6, 2001 Trial Tr. at 112. Plaintiff's counsel made a similar apology in her summation "apologiz[ing] for the length of time that [the trial] has taken." *See* February 6, 2001 Trial Tr. at 84. These statements are nothing but introductory banter by trial counsel made prior to moving into a discussion about the evidence itself and had no bearing on the jury's evaluation of the evidence.

The Court denies the Plaintiff's motion regarding the second alleged error by Defense counsel.

### 3. Defense Counsel Made Reference to Items Outside of the Evidence

"References to facts not in evidence is improper." *Draper*, 580 F.2d at 96. Reversal may be warranted if references to those facts prejudices the jury's verdict. *See Fineman*, 980 F.2d at 209. In the instant case, the Plaintiff objects to Defense counsel's statement that General Accident Insurance doesn't exist anymore and that Bill Davis had personal problems. Defense counsel accurately points out that there was sufficient evidence in the record regarding these issues. On January 29, 2001, Defendant Jenkins testified on examination by Plaintiff's counsel that "Commercial Union took over General Accident." *See* January 29, 2001 Trial Tr. at 74. In addition, Mike Freidel discussed his relationship with the Plaintiff testifying that they "used to talk about divorce. [The Plaintiff] was in the final phases of divorce and [Freidel] had a very turbulent marriage...." *See* February 5, 2001 Trial Tr. at 86. The transcripts make clear that

there was evidence in the record to support Defense counsel's statements.

The Court denies the Plaintiff's motion regarding the third alleged error by Defense counsel.

### 4. *Defense Counsel Vouched for the Credibility of the Witnesses*

■ The Plaintiff regards statements made by Defense counsel bolstering the credibility of two witnesses, Defendant Jenkins and John Elcock, as error. Regarding John Elcock, Defense counsel stated that "[h]is testimony was truthful." *See* February 6, 2001 Trial Tr. at 119. Pertaining to Defendant Jenkins, Defense counsel implied that the jury could infer that he was being truthful based upon his testimony that he had used the "N" word while driving. *See* February 6, 2001 Trial Tr. at 134. The Court finds that these two isolated, insignificant, off-the-cuff comments regarding the truthfulness of these witnesses did not influence the decision of the jury.

### 5. *Defense Counsel Incorrectly Argued Points of Law*

■ The Plaintiff complains that Defense counsel continued to argue conspiracy despite the fact that it had been removed from the case and incorrectly quoted the law of constructive discharge implying that the Plaintiff had a higher burden of proof. Without addressing the propriety of Defense counsel's actions, the Court dismisses Plaintiff's contentions on their face. Immediately following Defense counsel's summation and prior to Plaintiff's rebuttal, the Court told the jury that "there's no conspiracy claim in this case, ... just ignore anything anybody said about conspiracy." *See* February 6, 2001 Trial Tr. at 142. In addition, an argument regarding conspiracy could not have been prejudicial to the verdict

because the jury charge and interrogatories excluded the conspiracy claim. Finally, the jury was accurately charged by the Court on the law of constructive discharge. Any confusion caused by defense counsel's advocacy was cleared up by the Court's unambiguous charge and jury interrogatory.

The Court denies the Plaintiff's motion regarding the fifth alleged error by Defense counsel.

### 6. *Mischaracterizations and Misstatements by Defense Counsel*

The remaining claims by the Plaintiff are a series of alleged mischaracterizations and misstatements by Defense counsel regarding treatment of other employees, where one of Plaintiff's witnesses grew up, and when that same witness worked in a particular department. The Court finds that these statements by Defense counsel are so tangential to the ultimate issues in the case that it is highly improbable that they had the slightest impact on the jury's verdict. In addition, the Plaintiff was given ample opportunity in rebuttal to clarify any argument made by Defense counsel which the Plaintiff felt was misleading.

### 7. *Cumulative Effect of Alleged Errors*

■ As previously discussed, the Court will look to the cumulative effect of multiple errors in determining if the verdict was improperly influenced. *See Draper,* 580 F.2d at 95. While the Court has not found multiple errors on the part of Defense counsel, the absence of impact on the jury of the alleged wrongdoing by Defense counsel should be emphasized. In the Court's preliminary instructions, the jury was told that "[w]hat the lawyers say has nothing to do with the facts that you determine to be the truth, because the lawyers are going to say what they think the facts

prove, and they are entitled to do that." *See* January 24, 2001 Trial Tr. at 78. Then, explaining closing arguments, the Court informed the jurors that "[the lawyers] tell you what they think the evidence has proved. But what they think—you can listen to it and you can enjoy it, and if they're thinking what you're thinking, then fine, but if they're thinking something and they're saying something that you're not thinking, your thinking is what controls." *See* January 24, 2001 Trial Tr. at 91. The presentation of evidence at trial and the Court's instruction to the jury that the lawyer's words are not evidence leads the Court to the conclusion that none of Defense counsel's closing argument would have had an impact on the jury's verdict.

An appropriate Order follows.

### *ORDER*

AND NOW, this 7th day of May, 2001, upon consideration of the Plaintiff's Motion for a New Trial (Docket No. 126), the Plaintiff's Supplemental Brief in Support of Motion for New Trial (Docket No. 139), the Defendants' Opposition to Plaintiff's Motion for a New Trial (Docket No. 141), and the Memorandum of Law in Support of Defendants' Opposition to Plaintiff's Supplemental Brief in Support of Motion for a New Trial (Docket No. 143), IT IS HEREBY ORDERED that the Plaintiff's Motion is **DENIED.**