Lonnie **HILLIARD**, Plaintiff,

v.

**MORTON BUILDINGS, INC.**, a foreign corporation, **Dennis Russum**, and **Lenny Catolano Defendants.**

No. CIV.A.00–789–JJF.

United States District Court, D. Delaware.

March 25, 2002.

Noel E. Primos, Schmittinger & Rodriguez, P.A., Dover, DE, for Plaintiff.

Robert F. Stewart, Jr., Dilworth Paxson, L.L.P., Wilmington, DE, for Defendants.

## MEMORANDUM OPINION

FARNAN, District Judge.

Presently before the Court is a Motion For Summary Judgment (D.I. 22) filed by Defendants Morton Buildings, Inc., Dennis Russum, and Lenny Catolano (collectively "Defendants"). For the reasons set forth below, Defendants' Motion For Summary Judgment (D.I. 22) will be granted in part and denied in part.

## BACKGROUND

### I. Factual Background

Defendant Morton Buildings, Inc. (hereinafter "Morton") is in the business of designing, selling, and delivering complete buildings, including garages, horse barns, livestock buildings, farm machinery buildings, and churches. (D.I. 23 at 2). On May 25, 1999, Plaintiff Lonnie Hilliard (hereinafter "Plaintiff") applied for a construction position with Morton's Harrington, Delaware office. (D.I. 23 at 2). Dennis Russum (Russum), the sales manager for Morton's Harrington, Delaware office and the person responsible for all employment decisions regarding construction crew members, directed Plaintiff to fill out the appropriate paperwork. (D.I. 23 at 2). Because the construction position for which Plaintiff applied required basic math skills, Russum also instructed Plaintiff to take Morton's standardized math screening test. (D.I. 23 at 2). Sometime within

the next few days, Plaintiff was hired by Russum.[1]

Before Plaintiff was permitted to begin working, Plaintiff was required to complete a physical examination. (D.I. 23 at 3). Dr. Robinson, the physician who conducted Plaintiff's physical, noted that Plaintiff's physique and development were adaptable to heavy work, and that Plaintiff's physical condition was "acceptable for any kind of work for which he is qualified." (D.I. 24, Ex. 6). Dr. Robinson also noted that Plaintiff was obese. (D.I. 24, Ex. 6). Plaintiff's height was measured at six foot, four and a half inches (6' 4½"), and his weight at three hundred and thirty three (333) pounds. (D.I. 24, Ex. 6).

Prior to beginning work, Plaintiff was also required to engage in a period of safety training. (D.I. 23 at 3). A significant portion of Plaintiff's training was comprised of fall protection, as Plaintiff's job required him to work above the ground. (D.I. 23 at 4). Plaintiff was also required to take Morton's "New Employee Safety Quiz," which tested Plaintiff's general knowledge of accident prevention on a work site. (D.I. 23 at 2).

On June 27, 1999, Plaintiff began work for Morton. At that time, Morton had roughly seventeen (17) to eighteen (18) crew members divided into several crews. Each crew had its own foreman, whose duties included laying out the building, setting the building columns, establishing the building grade and height, and managing the crew's productivity. (D.I. 23 at 4). Crews typically worked from 6:30 A.M. to 5:30 P.M., Monday to Friday. (D.I. 23 at 5). Each morning, the crews would report to Russum at Morton's Harrington, Delaware office before proceeding to their respective work sites. (D.I. 23 at 5). The crew's productivity was particularly important to the crew members because Morton would issue a bonus upon timely completion of a building. (D.I. 23 at 13).

Russum initially assigned Plaintiff to Foreman Mike Robinson's crew, which was short one man at the time. (D.I. 23 at 5). Within a few weeks of Plaintiff's start date, Russum visited the job site at which Robinson's crew was working to ascertain the status of the project. (D.I. 23 at 6). While on the job site, Russum allegedly watched a purlin "bow" under Plaintiff's weight. (D.I. 23 at 6). At that time, Robinson was allegedly standing next to Russum, and expressed concern about Plaintiff's weight. (D.I. 23 at 6). According to Robinson, Plaintiff would occasionally dent roof steel where he stepped, and had to "constantly" stop and take breaks because of the summer heat. (D.I. 23 at 6). After further complaints by Robinson about Plaintiff's weight, work, and productivity, Russum allegedly told Plaintiff on or about July 17, 1999 that his weight had become a safety concern and he was going to be let go. (D.I. 27 at 5).

The following day, Plaintiff called Russum to inquire about the "real reason" for his termination. (D.I. 23 at 7). Plaintiff conceded that he had made some mistakes while working for Robinson, but indicated that Robinson failed to properly supervise his work. (D.I. 23 at 7). Russum, because of alleged sympathy for Plaintiff, allowed Plaintiff to return to work and indicated that Plaintiff would be placed with a different crew. (D.I. 23 at 8).

On July 24, 1999, Plaintiff reported to work and was assigned to Foreman Leonard Catolano's crew. (D.I. 23 at 8). Russum allegedly told Plaintiff and Catolano

---

1. The parties dispute Plaintiff's exact hiring date. (D.I. 23 at 2–3; D.I. 28 at B3). While Plaintiff alleges that Russum hired him "on the spot," Defendants contend that Russum had to "think about it for a day or so" because Plaintiff was a very heavy man and scored poorly on Morton's math screening test. (D.I. 23 at 2–3; D.I. 28 at B3).

that, until Plaintiff could lose some weight, Plaintiff should be kept on the ground as much as possible. (D.I. 23 at 9).

While on his first and second job with Catolano's crew, Plaintiff allegedly continued to dent roof sheets and take excessive breaks. (D.I. 23 at 9). Additionally, Plaintiff allegedly cracked a side wall nailer while "climbing the wall" of a building. (D.I. 23 at 9). In light of these facts, Catolano and his crew allegedly expressed to Russum that Plaintiff's weight was a safety concern. (D.I. 23 at 10).

While Plaintiff was on his third job with Catolano's crew, Jack Ketelle, Morton's regional crew supervisor, visited the job site to assess the crew's progress. (D.I. 23 at 11). Ketelle observed Plaintiff jump from one purlin to another after the first purlin began to crack under Plaintiff's weight. (D.I. 23 at 11). While Catolano informed Ketelle that the purlin which began to crack was already damaged, Ketelle allegedly indicated to Catolano that Plaintiff was too heavy and should be terminated for safety reasons. (D.I. 23 at 11). Later, Ketelle allegedly approached Russum and expressed concern about Plaintiff's weight. (D.I. 23 at 11). According to Ketelle, Russum and Ketelle jointly decided to terminate Plaintiff's employment. (D.I. 23 at 11).

At the end of August 1999, Russum informed Plaintiff that he was terminated. (D.I. 23 at 12). Specifically, Russum told Plaintiff that he was terminated "because of [his] weight and nothing else." (D.I. 23 at 12). Russum subsequently tried to find Plaintiff new employment. (D.I. 23 at 12). Due to Russum's efforts, Sunnyfield Contractors hired Plaintiff; however, Plaintiff decided not to take the job. (D.I. 23 at 12). Plaintiff eventually obtained employment with Nanticoke Homes around September 24, 1999 (D.I. 23 at 12). In November 1999, Russum replaced Plaintiff with Ray Justus. (D.I. 27 at 11).

## II. Procedural Background

Plaintiff initiated the instant action on August 28, 2000. (D.I. 1). By his Complaint, Plaintiff alleges that Defendants violated his rights under Title VII of the Civil Rights Act and 42 U.S.C. § 1981. (D.I. 1). Specifically, Plaintiff alleges that he was harassed and subsequently terminated from his employment because of his status as an African–American. (D.I. 1).

The parties have completed discovery in this matter, and Defendants have filed the instant Motion For Summary Judgment (D.I. 22). In opposition, Plaintiff has conceded that he cannot pursue his Title VII claim against the individual Defendants. (D.I. 27 at 18). Plaintiff has also conceded that there is insufficient evidence to establish his hostile work environment claim. (D.I. 27 at 9).

In light of Plaintiff's concessions, the Court will grant summary judgment on Plaintiff's hostile work environment claim and his Title VII claim against the individual Defendants. Accordingly, Plaintiff's claims of discriminatory discharge against Morton under Title VII, and against Morton, Russum, and Catolano under Section 1981, are the only remaining claims.

## DISCUSSION

### I. Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure provides that a party is entitled to summary judgment if a court determines from its examination of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In determining whether there is a triable dispute of material fact, a court must review all of the evidence and construe all

inferences in the light most favorable to the non-moving party. *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir.1976). However, a court should not make credibility determinations or weigh the evidence. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 120 S.Ct. 2097, 2110, 147 L.Ed.2d 105 (2000). Thus, to properly consider all of the evidence without making credibility determinations or weighing the evidence the "court should give credence to the evidence favoring the [non-movant] as well as that 'evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses.' " *Id.*

To defeat a motion for summary judgment, Rule 56(c) requires the non-moving party to:

> do more than simply show that there is some metaphysical doubt as to the material facts.... In the language of the Rule, the non-moving party must come forward with "specific facts showing that there is a genuine issue for trial." ...
> Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is "no genuine issue for trial."

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Accordingly, a mere scintilla of evidence in support of the non-moving party is insufficient for a court to deny summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## II. Plaintiff's Discrimination Claim

### A. *The McDonnell Douglas Analysis*

■ Discrimination claims under Title VII and 42 U.S.C. § 1981 are analyzed under the framework set forth by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792,

802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See Pamintuan v. Nanticoke Memorial Hospital,* 192 F.3d 378 (3rd Cir.1999) (holding that Title VII and Section 1981 are construed to be consistently interpreted). Under this burden-shifting analysis, the plaintiff must first establish a prima facie case of discrimination. *Reeves,* 120 S.Ct. at 2106. Once a prima facie case is established, the burden of production shifts to the defendant to produce a legitimate non-discriminatory reason for the adverse employment action taken against the plaintiff. *Id.* Because the burden of persuasion does not shift at this stage, the employer's legitimate non-discriminatory reason is not evaluated insofar as its credibility is concerned. *Id.* Once a legitimate non-discriminatory reason is proffered, the presumption of discrimination or retaliation created by the prima facie case "drops away." *Id.* At this point, the plaintiff must proffer sufficient evidence for the fact finder to conclude by a preponderance of the evidence that the legitimate non-discriminatory reasons offered by the employer were not true, but were a pretext for unlawful discrimination. To this effect, it is not enough for the fact finder to disbelieve the defendant's legitimate non-discriminatory reason. Rather, even if the fact finder finds the defendant's reason unpersuasive or contrived, there must still be sufficient evidence for the fact finder to believe the plaintiff's explanation for the adverse action, i.e. that the defendant intentionally discriminated against the plaintiff. *Id.* at 2108–2109.

### B. *Whether Defendants Are Entitled To Summary Judgment On Plaintiff's Race Discrimination Claim Under Section 1981 and Title VII*

By their Motion, Defendants contend that they are entitled to summary judgment on Plaintiff's race discrimination claims under § 1981 and Title VII, because Plaintiff has failed to proffer sufficient evi-

dence to establish that Defendants terminated Plaintiff because of his race rather than the concerns posed by his excessive weight. (D.I. 23 at 17–22). In response, Plaintiff contends that he has presented sufficient evidence to allow the question of Defendants' motive and/or intent to be decided by a jury. (D.I. 27 at 9–17). The Court will examine each of the parties' arguments in turn.

### 1. *Whether Plaintiff Has Established A Prima Facie Case*

■ To establish a prima facie case of wrongful termination based on race discrimination under Title VII and § 1981, a plaintiff must establish that: (1) he or she is a member of a protected class; (2) he or she is qualified for the former position; (3) he or she suffered an adverse employment action; and (4) the circumstances of the plaintiff's termination give rise to an inference of race discrimination. *Goosby v. Johnson & Johnson Med., Inc.*, 228 F.3d 313, 318–19 (3d Cir.2000); *Pivirotto v. Innovative Sys., Inc.*, 191 F.3d 344, 356 (3d Cir.1999).[2] The Defendants do not dispute that Plaintiff has satisfied the first and third elements, as the record is clear that Plaintiff is an African–American and was terminated from his position with Morton. Accordingly, the Court will turn to the parties arguments with respect to the second and fourth elements to determine whether Plaintiff has established a prima facie case of wrongful termination.

### a. Whether Plaintiff is qualified for the position of crew member

■ With regard to the second element, Defendants contend that the record is overwhelmed with evidence that Plaintiff is not qualified for the position of crew member. (D.I. 32 at 7–9). Specifically, Defendants refer the Court to the testimony of numerous Morton employees who have indicated that Plaintiff could not physically keep up with the members of his respective crews. (D.I. 32 at 7–9).

In opposition, Plaintiff contends that there is sufficient evidence from which a factfinder could find that he was qualified for the position of crew member. Specifically, Plaintiff contends that his physical examination report indicates that his physique and development were adaptable to heavy work, his pulse rate was unchanged before and after exercise, and his physical condition was "[a]cceptable for any kind of work for which he is qualified." (D.I. 27 at 3; D.I. 24, Ex. 6). Plaintiff also contends that he successfully completed Morton's safety training and obtained a passing score on Morton's math screening test. (D.I. 27 at 10). Plaintiff further contends that Catolano has testified that Plaintiff "came to work on time" and if "[y]ou told [plaintiff] what to he had to do, . . . he did it." (D.I. 27 at 10; D.I. 28 at B27). Plaintiff finally contends that Russum testified, in response to whether Plaintiff was a good employee, that Plaintiff was a "five" on a scale of one to ten. (D.I. 27 at 10; D.I. 28 at B59). According to Plaintiff, this evidence, in addition to his own testimony, is sufficient to create a genuine issue of material fact regarding Plaintiff's qualification.

Upon reviewing the evidence in a light most favorable to Plaintiff, the Court concludes that there is sufficient evidence

---

**2.** The fourth element of a prima facie case of wrongful termination can also be established by demonstrating that non-members of the protected class were treated more favorably than the plaintiff. *Id.* However, because Plaintiff has failed to present any "comparator" evidence in support of his claim of wrongful termination, the Court will address only whether the circumstances of Plaintiff's termination give rise to an inference of discrimination in determining whether Plaintiff has established the fourth element of a prima facie case.

from which a factfinder could find that Plaintiff was qualified for the position of crew member. Thus, Defendants have failed to meet their burden of showing the absence of a genuine issue of material fact regarding Plaintiff's qualification. Accordingly, to determine whether Plaintiff has established a prima facie case of wrongful termination, the Court must turn to the parties arguments with respect to the fourth element.

b. Whether the circumstances surrounding Plaintiff's termination give rise to an inference of discrimination

With regard to the fourth element, Defendants contend that Plaintiff has not offered sufficient evidence to establish that he was terminated under circumstances giving rise to an inference of discrimination. (D.I. 23 at 17). Specifically, Defendants contend that Plaintiff has failed to identify either prior instances of racial discrimination or any similarly situated nonprotected employees who were treated differently than Plaintiff. (D.I. 23 at 18; D.I. 32 at 10).

In response, Plaintiff contends that there is sufficient evidence from which a factfinder could find that the circumstances surrounding his termination give rise to an inference of discrimination. Plaintiff contends that the record is clear that he was replaced by Ray Justus, a white male. According to Plaintiff, the fact that he was replaced by a white male is sufficient, by itself, to establish the fourth element of a prima facie case. Plaintiff nonetheless contends that there is additional evidence which supports his race discrimination claim. Specifically, Plaintiff contends that the conduct of various crew members he worked with during his employment with Morton establishes that he worked in a discriminatory environment. (D.I. 27 at 17). Plaintiff contends that the members of Robinson's crew never spoke to Plaintiff, and spoke little around Plaintiff. (D.I. 27 at 4). Plaintiff also contends that Robinson's crew members "would begin to make comments about African–American women that they would see and then would stop because Plaintiff was nearby." (D.I. 27 at 4; D.I. 28 at B7). Additionally, Plaintiff contends that the members of Catolano's crew, including Catolano, became comfortable about making racist comments to him. (D.I. 27 at 6). On one occasion, Plaintiff contends that Catolano stated to Plaintiff, "I don't understand why black guys don't work ... all they want to do is complain and want a free ride." (D.I. 27 at 6; D.I. 28 at B10). Plaintiff contends that he protested in response, stating that he worked, and Catolano "snickered." (D.I. 27 at 6; D.I. 28 at B10). On another occasion, Plaintiff contends that Catolano asked him, "You have a Pathfinder and a home? Man, how can a guy do that?" (D.I. 28 at B7; D.I. 23 at 10).

Plaintiff further contends that various comments made by Russum confirm that Plaintiff worked in a discriminatory environment. (D.I. 27 at 16–17). Plaintiff contends that, when he was initially assigned to Robinson's crew, Russum stated to Plaintiff, "Just watch yourself, because these guys, they really don't care for people, basically, you know." (D.I. 23 at 5; D.I. 28 at B7). Plaintiff also contends that, during the telephone conversation between Plaintiff and Russum the day after Plaintiff's first termination, Russum stated in reference to Robinson's crew, "These guys are going to have to learn to work with other people." (D.I. 23 at 7; D.I. 28 at B8). Plaintiff further contends that, when he was later assigned to Catolano's crew, Russum stated to Plaintiff, "You have to watch these group of guys because they are kinda racist." (D.I. 23 at 8; D.I. 28 at B6).

Upon reviewing the evidence in a light most favorable to Plaintiff, the Court con-

cludes that a genuine issue of material fact exists regarding whether the circumstances of Plaintiff's termination give rise to an inference of discrimination. In discrimination cases, when determining whether a plaintiff's claims should survive summary judgment, the record must be viewed as a whole, and evidence should not be considered in vacuum. *See Abramson v. William Paterson College of New Jersey,* 260 F.3d 265, 276 (3rd Cir.2001) (holding that "[w]hile the individual pieces of evidence alone may not suffice to make out the claims asserted, we must view the record as a whole picture"). When considered separately, the fact that Plaintiff was replaced by a white employee would not create an inference of discrimination, and the comments of the various crew members would constitute "stray remarks." *See Pivirotto,* 191 F.3d at 352–54 (holding that the protected or non-protected status of a replacement employee in wrongful termination cases is not a determinative factor in answer to whether a plaintiff has established a prima facie case); *see also Ezold v. Wolf, Block, Schorr, & Solis–Cohen,* 983 F.2d 509, 545 (3rd Cir.1992) (holding that stray remarks by non-decision makers are inadequate to support an inference of discrimination). However, when the record is viewed as a whole, the Court is convinced that there is sufficient circumstantial evidence from which a factfinder could find that the circumstances of Plaintiff's termination give rise to an inference of discrimination. Accordingly, the Court concludes that Plaintiff has met his burden of establishing a prima facie case of wrongful termination.

   2. *Whether Plaintiff has offered sufficient evidence for a reasonable fact finder to conclude that Defendants' reason for Plaintiff's discharge was pretextual*

■ Defendants have articulated a legitimate non-discriminatory reason for Plaintiff's discharge. Specifically, Defendants contend that Plaintiff was discharged because Plaintiff's excessive weight had a negative effect on his productivity and posed a safety risk to both Plaintiff and his co-workers. (D.I. 23 at 10). Because Defendants have articulated a legitimate non-discriminatory reason for terminating Plaintiff, the presumption of discrimination which arises from Plaintiff's prima facie case disappears. Accordingly, Plaintiff must "cast sufficient doubt upon the employer's proffered reasons to permit a reasonable fact finder to conclude that the reasons are incredible." *Sheridan v. E.I. DuPont de Nemours & Co.,* 100 F.3d 1061, 1072 (3d Cir.1996).

■ A plaintiff can cast sufficient doubt on a defendant's legitimate non-discriminatory reason by showing "weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reasons for its action [such] that a reasonable fact finder could rationally find them 'unworthy of credence'." *Reeves,* 120 S.Ct. at 2106 (citations omitted). In this case, Plaintiff raises the same evidence in the pretext stage that he raised previously in the prima facie case stage of his argument. Specifically, Plaintiff contends that he was qualified for the position of crew member, as evidenced by his own testimony, the results of his math screening test, his physical examination report, and the testimony of Russum and Catolano. According to Plaintiff, when his qualifications are viewed in light of the alleged comments by Russum, discriminatory conduct by his co-workers, and the fact that Defendants replaced Plaintiff with a white male, there is sufficient evidence to show pretext. (D.I. 27 at 12–18).

   In addition to his previously offered evidence, Plaintiff contends that there are several inconsistencies with Defendants' legitimate non-discriminatory reason for

terminating Plaintiff. (D.I. 27 at 13). Specifically, Plaintiff contends that Defendants were aware of Plaintiff's weight at the time Plaintiff applied for the job, but still decided to hire Plaintiff. (D.I. 27 at 15). Plaintiff also contends that he never dented roof steel, cracked a purlin, or had trouble working in the heat. (D.I. 27 at 6). Plaintiff further contends that, despite the alleged concerns posed by his excessive weight, Defendants never informed Plaintiff that his excessive weight was a problem until he was terminated in August 1999. (D.I. 27 at 15). In light of these facts, Plaintiff contends that there is sufficient evidence for a reasonable factfinder to find Defendants' legitimate non-discriminatory reason "unworthy of credence." (D.I. 27 at 15).

Upon reviewing the evidence in a light most favorable to Plaintiff, the Court is convinced that Plaintiff has come forward with sufficient evidence for a reasonable factfinder to discredit Defendants' legitimate non-discriminatory reason for terminating Plaintiff's employment. Because the Court has previously concluded that there is sufficient evidence to establish a prima facie case of race discrimination, the Court concludes that there is sufficient evidence from which a factfinder could find that Defendants' legitimate non-discriminatory reason for Plaintiff's termination was a pretext for racial discrimination. *See Fuentes v. Perskie,* 32 F.3d 759, 763 (3rd Cir.1994) (holding that once a plaintiff has pointed to some evidence discrediting an employer's proffered reasons for its adverse decision, a plaintiff need not also come forward with additional evidence of discrimination beyond his or her prima facie case to survive summary judgment). Accordingly, Defendants' Motion For Summary Judgment (D.I. 22) with respect to Plaintiff's claims of discriminatory discharge against Defendant Morton under Title VII, and against Defendants Morton,

Russum, and Catolano under Section 1981, will be denied.

## CONCLUSION

For the reasons discussed, the Court will grant Defendants' Motion for Summary Judgment (D.I. 22) with respect to Plaintiff's hostile work environment claim and Plaintiff's Title VII claim against Defendants Russum and Catolano. The Court will deny Defendants' Motion For Summary Judgment (D.I. 22) with respect to Plaintiff's claims of discriminatory discharge against Defendant Morton under Title VII, and against Defendants Morton, Russum, and Catolano under Section 1981.

## *ORDER*

At Wilmington this 25th day of March 2002, for the reasons set forth in the Memorandum Opinion issued this date;

IT IS HEREBY ORDERED that:

1) Defendants' Motion For Summary Judgment (D.I. 22) is **GRANTED** with respect to Plaintiff's hostile work environment claim and Plaintiff's Title VII claim against Defendants Russum and Catolano;

2) Defendants' Motion For Summary Judgment (D.I. 22) is **DENIED** with respect to Plaintiff's claims of discriminatory discharge against Defendant Morton under Title VII, and against Defendants Morton, Russum, and Catolano under Section 1981.