

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-11-2003

# Bernback v. Greco

Precedential or Non-Precedential: Non-Precedential

Docket No. 02-2742

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"Bernback v. Greco" (2003). *2003 Decisions*. Paper 376.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/376

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————————

No:  02-2742

———————————

MICHAEL L. BERNBACK

v.

\* THOMAS GRECO, individually and
as President of Harvey's Lake
Amphitheater, Inc.;


Thomas Greco,

Appellant

\* (Amended as per the Clerk's 9/5/02 Order)

—————————————

On Appeal From the United States District Court
for the Middle District of Pennsylvania
District Court Judge: The Honorable A. Richard Caputo
(D.C. Civ. No. 98-cv-00230)

——————————————

Submitted Under Third Circuit L.A.R. 34.1(a)
July 10, 2003

Before: NYGAARD, SMITH, Circuit Judges,
and IRENAS,\*\* District Judge.

(Opinion Filed: July 11, 2003)

—————————————
          \*\*Honorable Joseph E. Irenas, Senior United States District Judge for the District
of New Jersey, sitting by designation.

OPINION OF THE COURT

SMITH, Circuit Judge:


I.     FACTS AND PROCEDURAL HISTORY

    A.     *History of the Litigation*

Michael Leslie Bernback and Thomas Greco have a long and complicated history

of business dealings, primarily in the concert promotion business.  Their relationship

deteriorated over time into a tangle of litigation in the state and federal courts.  In April

1996, Bernback filed a demand for arbitration against Greco, "Individually and as

President of Harvey's Lake Amphitheater," pursuant to a "Stock Purchase Agreement"

that contained an arbitration clause.  The nature of the dispute was characterized as

"Breach of Contract and Fiduciary Duty":

> Claimant [Bernback] and Respondent [Greco] entered into a Stock Purchase
> Agreement, wherein each became equal shareholders in a corporation, and
> Respondent, in violation of the agreement, and in breach of fiduciary duties,
> usurped the powers granted him by the agreement, effectively shutting
> Claimant out of the corporation to the financial detriment of claimant.

Greco responded to the demand for arbitration by filing an equity action in state

court seeking return of certain "share certificates."  In his original complaint, Greco

asserted that both he and Bernback were officers, directors, and shareholders in Harvey's

2

Lake Amphitheater, Inc., a Pennsylvania Corporation. Greco claimed that, in May 1995, Bernback had forfeited his shares to Greco, but had refused to turn them over to Greco. Greco sued to obtain physical possession of the shares and sought a declaration that Greco "is the owner of all of the stock in the Harvey's Lake Amphitheater, Inc., that was previously owned by" Bernback.

Greco then filed an amended complaint in equity, alleging that he and Bernback had entered into a "Shareholder's Agreement" with Harvey's Lake Amphitheater on May 21, 1993, in which Bernback pledged his stock in Harvey's to Greco, "and agreed that if [Bernback] was in breach of the provisions of the Agreement, [Greco] is entitled to immediate possession and ownership of all of the stock of Harvey's Lake Amphitheater, Inc., then owned by [Bernback]." In Greco's view, Bernback breached Paragraph 14 of the Agreement, entitling Greco to immediate possession of the stock certificates.

Bernback contends that Greco's action in equity was merely an attempt to derail the arbitration proceedings. As part of his equity action, Greco moved to stay the arbitration proceeding, on the ground that "the dispute among the parties does not arise under th[e] Stock Purchase Agreement," as alleged by Bernback in the demand for arbitration. Rather, Greco argued, the dispute arose over whether Bernback forfeited his shares under the Shareholders' Agreement, and therefore could not be arbitrated under the Stock Purchase Agreement. The Court of Common Pleas granted a preliminary injunction to enjoin the arbitration proceedings. The Court reasoned that the only parties

3

to the Stock Purchase Agreement were "Harvey's Lake Amphitheater, Inc." and Michael Leslie Bernback. Because Greco was not a party to the Stock Purchase Agreement, there was no agreement to arbitrate between Bernback and Greco.

In February 1998, Bernback filed an action in federal court for fraud, intentional interference with contractual relations, and intentional interference with business advantage. While acknowledging that his action sounded in tort, Bernback contended that it was based "on the contracts between these two men." Because of Greco's successful argument before the state court that he was not a party to the contract, Bernback contended that he had to sue under an interference with contract theory rather than a breach of contract theory. Bernback's complaint referred not only to the Stock Purchase Agreement, but also to another contract, the "Personal Guarantee, Hold Harmless and Assignment Agreement," which was entered on the same day, by Greco personally, in contemplation of further business dealings between the two men.

Greco counterclaimed, seeking return of his share certificates and attaching a copy of the May 21, 1993 Shareholders Agreement. In June of 1998, Greco filed an amended counterclaim, alleging not only counts in equity and fraud, but also breach of contract. Greco alleged that Bernback breached both the Stock Purchase Agreement and the Shareholder's Agreement. The Court ultimately dismissed Greco's Breach of Contract claim based on the fact that Greco was not a party to the Stock Purchase Agreement. Bernback thus contends that

4

in the earliest stages of this litigation, all three of the primary contracts between these two men were on the table for all to see. Couched as it may have been in the name of a tort, the nature of this action was and always has been one centered on the agreements that these two men made between themselves.

Although Greco had contended that he was not a party to the Stock Purchase Agreement, in August of 2000, he retained new counsel and for the first time argued in a summary judgment motion that "the Stock Purchase Agreement literally incorporates the Shareholder[] Agreement, to which Greco is a party, thereby making Greco a party to the Stock Purchase Agreement, as well." Bernback thus maintains that, two months before trial, Greco completely changed his legal strategy. By arguing that he was a party to the Stock Purchase Agreement, Greco was able to contend that, as a matter of law, he could not have interfered with that contract.[1]

In response to Greco's shifting litigation strategy, Bernback sought to amend his complaint, during trial, to include two additional counts: (1) breach of contract as to the Stock Purchase Agreement; and (2) breach of contract as to the Shareholder Agreement. The District Court permitted him to add an amendment regarding the Stock Purchase Agreement, but refused to allow the other proposed cause of action.

Following trial, the jury returned a verdict in favor of Bernback for breach of the

---

[1] By definition, the tort of interference with contract under Pennsylvania law requires that a defendant interfere with contracts which exist or will exist between the plaintiff and third parties. A party to the contract itself cannot be the tortfeasor. *Daniel Adams Assoc., Inc. v. Rimbach Publishing, Inc.*, 360 Pa. Super. 72, 78-79 (1987).

Stock Purchase Agreement in the amount of $225,000. The District Court denied Greco's post trial motion for judgment as a matter of law and awarded Bernback attorney fees and costs in the amount of $162,748.62. Greco then filed the instant appeal.

## B. *The Relevant Agreements*

The Stock Purchase Agreement is dated May 21, 1993 and the parties are Harvey's Lake Amphitheater, Inc. and Michael Leslie Bernback. Thomas Greco was the sole shareholder and owner of Harvey's Lake Amphitheater. Pursuant to the Stock Purchase Agreement, Bernback acquired a 50% interest in Harvey's Lake Amphitheater, subject to certain conditions. In essence, the Stock Purchase Agreement provided that Bernback would become Greco's partner in Harvey's Lake Amphitheater, Inc., on the condition that Bernback negotiated and paid off certain items of debt, up to $125,000. The Agreement was signed by Thomas Greco, in his capacity as President of Harvey's Lake.

The Personal Guarantee, Hold Harmless and Assignment Agreement was entered into on May 21, 1993, "by and between THOMAS J. GRECO ("GRECO") and MICHAEL LESLIE, also known as MICHAEL LESLIE BERNBACK ("LESLIE")." The Guaranty states that "concurrent with the execution of this Agreement, MICHAEL LESLIE is, in reliance upon GRECO's execution hereof, entering into a written Stock Purchase Agreement dated May 21, 1993 . . . with HARVEY'S LAKE AMPHITHEATER, INC." Further, it makes execution of the Guaranty a condition precedent "to the closing of the transaction contemplated by the Stock Purchase

6

Agreement." True to its name, the Personal Guarantee contains a personal guarantee by Greco regarding all obligations, promises, and representations in the Stock Purchase Agreement, and also states that "Greco is therefore personally subject to and liable for all remedies available to LESLIE" under the Stock Purchase Agreement. The document also states that

> In the event of any default, failure of consideration, misrepresentation, adverse change in circumstances relating to representations, or breach of contract or warranty by HLAI [Harvey's Lake Amphitheater, Inc.] in connection with the Stock Purchase Agreement, LESLIE may pursue all of its remedies thereunder directly against HLAI alone, or, against GRECO and HLAI concurrently.

The Shareholder Agreement was also entered into on May 21, 1993, by Thomas Greco, Michael Leslie [Bernback], and Harvey's Lake Amphitheater. Like the Stock Purchase Agreement, this agreement also contained an arbitration clause.

## II.    JURISDICTION

The District Court had jurisdiction under 28 U.S.C. §1332(a)(1). This Court has jurisdiction pursuant to 28 U.S.C. §1291.

## III.    ANALYSIS

### A.    *Amendment of the complaint*

Greco first complains that the District Court erred in permitting Bernback to amend his complaint during trial to add a breach of contract claim. Bernback argues that the District Court did not commit reversible error, because: (1) Greco was on notice from the litigation's inception that Bernback's action was based on contract principles; (2)

7

Greco's own legal theories and strategies created the need for the amendment; and (3) Greco was not prejudiced by the amendment.

We review the District Court's grant of leave to amend a complaint for abuse of discretion. *Douglas v. Owens*, 50 F.3d 1226, 1235 (3d Cir. 1995). Federal Rule of Civil Procedure 15(b) provides that parties may amend a pleading to conform to the evidence

> when issues not raised by the pleadings are tried by express or implied consent of the parties. . . . Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment. . . . If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice the party in maintaining the party's action or defense upon the merits.

Fed. R. Civ. P. 15(b). Whether an issue was tried by "implied consent" of the parties depends on "whether the parties recognized that the unpleaded issue entered the case at trial, whether the evidence that supports the unpleaded issue was introduced at trial without objection, and whether a finding of trial by consent prejudiced the opposing party's opportunity to respond." *Douglas*, 50 F.3d at 1236. In the instant case, the parties certainly recognized that the unpleaded issue entered the case at trial, because Bernback moved to amend the complaint during his case in chief, the District Court heard argument, and ruled on the motion before Greco presented his case.

We agree with the District Court that Greco was not prejudiced by the amendment.

8

The District Court correctly determined that the breach of contract claim had been raised, "not only by the evidence, but it's been fairly raised by the pleadings from both sides throughout the course of this litigation."

Greco was clearly on notice regarding the existence of the contracts and the possibility of an action based on breach of contract. In his opening, Greco's counsel discussed both the Stock Purchase Agreement and the Shareholders Agreement, noting that Greco's and Bernback's "relationship is indeed founded in contract, in agreements that they made between themselves." He went on to say that Bernback's wrongful interference with contract theory "isn't really supposed to turn contract disputes into tort damages actions, which is really what's happening." During Bernback's case in chief, counsel admitted into evidence copies of both the Stock Purchase Agreement and Personal Guarantee, as well as the Shareholders Agreement.

Furthermore, Greco's inconsistent positions as to whether he was or was not a party to the Stock Purchase Agreement created the need for Bernback to move to amend his complaint to assert a breach of contract claim. In state court, Greco successfully argued that he was not a party to the contract. In federal court, Greco denied being a party to the Stock Purchase Agreement in his Amended Answer filed May 7, 1998, but in his June 1998 Amended Counterclaim, alleged that Bernback "breached the Stock Purchase Agreement." On December 10, 1998, the District Court dismissed Greco's

9

counterclaim because Greco was not a party to that agreement.[2]  Then, two months before trial, in August 2000, Greco retained new counsel and argued that he was a party to the Stock Purchase Agreement.

Greco asserts on appeal that he was prejudiced by the amendment because it affected his witness selection.  We are not persuaded by this argument, given that the witnesses Greco alleged he would have called in a breach of contract case were listed not only in his initial disclosures, but also in his pre-trial witness list.  Because the Court decided the motion to amend prior to Greco's case in chief, he was not precluded from calling any witness he chose.  In conclusion, we are satisfied that the District Court did not abuse its discretion in permitting Bernback to amend his complaint to include a breach of contract claim.

## B.    *Sufficiency of the evidence*

Greco filed a motion for judgment as a matter of law following the jury verdict in Bernback's favor.  The District Court denied Greco's motion.  We exercise plenary

---

[2]  We agree with Bernback that Judge Caputo's decision to grant leave to Bernback to amend his action to include breach of the Stock Purchase Agreement was not inconsistent with his December 10, 1998 dismissal of Greco's counterclaim.  Under the Personal Guarantee, Hold Harmless and Assignment Agreement, Greco personally guaranteed performance of all of the promises, obligations, and terms set forth in the Stock Purchase Agreement, and pledged to be liable for all remedies available to Bernback under the Stock Purchase Agreement.  Because he undertook this personal guarantee, Greco cannot now argue that he was not on notice of the possibility that Bernback would file a breach of contract suit under the Personal Guarantee based on the terms of the Stock Purchase Agreement.

10

review of a district court's grant or denial of a motion for judgment as a matter of law. *Walter v. Holiday Inns, Inc.*, 985 F.2d 1232, 1238 (3d Cir. 1993). Reversal of a jury verdict is only appropriate if, "viewing all the evidence which has been tendered and should have been admitted in the light most favorable to the party opposing the motion, no jury could decide in that party's favor." *Id.* at 1238.

Although the parties were not helpful in pointing to the relevant parts of the record, there is sufficient evidence for a rational juror to find that Greco breached the Stock Purchase Agreement. With respect to Harvey's Lake's loss of the business opportunity with Metropolitan Entertainment Co., Greco testified that he entered into discussions with a company called Metropolitan regarding a possible agreement between Harvey's Lake and Metropolitan, whereby Harvey's Lake Amphitheater would close, shows scheduled to take place there would move to a venue called Montage, and Greco and Bernback would receive 17% of the profits from those shows. However, Metropolitan ultimately decided that it did not wish to go through with the Agreement, based largely on actions by Greco.

Bernback's counsel read into the record at trial the deposition of James Koplik, the President of Metropolitan. Koplik testified that the relationship between Metropolitan and Harvey's lake dissolved as a result of actions by Greco, including his having gotten into a fight with a police officer at a concert, accepting advertising money when he was not actually putting on shows at a venue, and other problems. Koplik testified that

11

Metropolitan's decision to end its relationship with Harvey's Lake had nothing to do with Bernback.

Counsel for Bernback introduced correspondence between Greco and Bernback, in which Greco admitted that he had made misrepresentations to Metropolitan during the course of negotiations, including indicating to them that he was personally liable on a lease when he was not. Counsel also introduced testimony by Shirley Hanson that Greco had intentionally altered a lease agreement. Greco had also, contrary to his promises, opened Harvey's Lake during the summer of 1994 and told the media that he intended to open it during the summer of 1995.

The foregoing evidence was sufficient for a rational juror to find that Greco breached Section 6.21 of the Stock Purchase Agreement, which requires Greco to refrain from action that would compromise Harvey's Lake's ability to achieve the highest level of profitability.

### C. Jury Instructions

Where, as here, the District Court has not misstated the applicable law, we review its charge to the jury for abuse of discretion. *Greenleaf v. Garlock*, 174 F.3d 352, 361 (3d Cir. 1999). Greco challenges the District Court's instructions regarding breach of contract. Bernback suggests that most of what Greco submitted as proposed points for charge was included in the actual instructions. Indeed, the District Court reminded the jury that Bernback bore the burden of proof, and also gave the jury Greco's proposed

12

instructions regarding trivial non-performance and acquiescence by Bernback.

Greco's first attack on the jury instructions is that the District Court erred in instructing the jury that "whether [Bernback] is or is not a shareholder should not be a basis in whole or in part for any findings you arrive at in your deliberations in this case." Bernback argues that this instruction could not have come as a surprise to Greco, because the District Court had made a pre-trial ruling on Greco's Motion for Expedited Separate Trial concerning Bernback's status as a shareholder. Greco requested that the jury be told that Bernback was not a shareholder as a matter of law, which would have been improper. Bernback's shareholder status was irrelevant to whether or not Greco breached the Stock Purchase Agreement. Thus, the District Court did not abuse its discretion in denying this requested instruction.

Greco's second specific complaint about the jury instructions is that the District Court prejudiced Greco by directing the jury's attention to certain provisions of the Stock Purchase Agreement. At the charge conference, the District Court stated to counsel that there were two sets of circumstances that might have given rise to a breach of contract: (1) the loss of the Montage or Metropolitan involvement, and (2) the question of the operation of HLAI with respect to its funds, and whether funds were misapplied in terms of being used for purposes other than those of the corporation. The District Court then directed the jury to consider the specific sections of the contract.

We agree with Bernback that the District Court's instructions drawing the jury's

13

attention to particular contractual provisions were not improper, given that it was still within the province of the jury to determine whether Greco did or did not breach those provisions. In addition, Greco's counsel did not object when the Court informed the parties, prior to charging the jury, that he intended to mention particular contractual provisions. Even if the District Court's instructions regarding specific provisions of the contract were erroneous, we can affirm the jury verdict in Bernback's favor if those errors were harmless. *Pivirotto v. Innovative Systems, Inc.*, 191 F.3d 344, 357 (3d Cir. 1999). Any error here would have been harmless because, "in light of the total record here, we are satisfied that no jury would have found" for Bernback "solely on the basis of the [erroneous] instruction." *Id.* We conclude that the District Court's jury instructions were fully consistent with the sound exercise of judicial discretion.

### D. Damages

The jury awarded Bernback $225,000 in damages for Greco's breach of the Stock Purchase Agreement. We are satisfied that a rational juror could have concluded that these damages flowed from Greco's breach of the Stock Purchase Agreement through the Personal Guarantee.

### E. Attorney Fees and Costs

As the prevailing party, Bernback asserted that he was due $287,050 in attorney's fees and $69,470.87 in expenses, pursuant to the Stock Purchase Agreement and the Personal Guarantee. Bernback argues the contracts between Bernback and Greco clearly

14

contained fee shifting provisions that allowed for an award of attorneys' fees and costs to the prevailing party.

The District Court looked to two contract provisions that supported the award of attorney's fees. Section 13.13 of the Stock Purchase Agreement provides that "if any action at law or equity is brought to enforce or interpret this Agreement, the prevailing party therein shall be entitled to recover from the other party the actual attorney's fees incurred, court costs, and other litigation-related expenses. The Personal Guarantee provided for attorney's fees and costs in almost identical language.

Nonetheless, Bernback entered into a fee agreement with counsel providing that Bernback's attorney's fees are limited to 40% of the jury verdict. Since the jury verdict was $225,000, the Court awarded Bernback $90,000 in fees. The District Court did not err in conforming the fee award to the fee agreement between Bernback and his counsel.

With respect to Bernback's claimed expenses of $69,470.87, which covered fax, photocopying, telephone, investigation, and travel expenses, we agree with the District Court that these were reasonable.

## IV. CONCLUSION

For the foregoing reasons, the judgment of the District Court will be affirmed.

15

TO THE CLERK:

Please file the foregoing Opinion.

_\_\_/s/ D. Brooks Smith_____
Circuit Judge

16